J-A16028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL MALDONADO | : | |
| | : | |
| Appellant | : | No. 1646 EDA 2021 |

Appeal from the PCRA Order Entered July 20, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011234-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL MALDONADO | : | |
| | : | |
| Appellant | : | No. 1647 EDA 2021 |

Appeal from the PCRA Order Entered July 20, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011255-2007

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED JANUARY 20, 2023**

Angel Maldonado (Appellant) appeals from the orders[1] entered in the

Philadelphia County Court of Common Pleas denying his first petition filed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant filed two separate notices of appeal for both criminal dockets. Therefore, he has complied with ***Commonwealth v. Walker***, 185 A.3d 969,
*(Footnote Continued Next Page)*

under the Post-Conviction Relief Act (PCRA).[2] Appellant was convicted of two counts of first-degree murder, and one count each of attempted murder, aggravated assault, possession of a firearm prohibited, firearms not to be carried without a license, and possession of an instrument of crime,[3] and sentenced to an aggregate term of life imprisonment. On appeal, he asserts the PCRA court erred when it dismissed, without holding an evidentiary hearing, his challenges to trial counsel's ineffectiveness for failing to object to the trial court's jury instructions pertaining to the standard of proof and certain witness testimony. For the reasons below, we affirm.

Appellant, along with his co-defendant Angelo Martinez, shot and killed two individuals and seriously wounded a third person following a verbal dispute on a street corner in Philadelphia. The PCRA court summarized the underlying facts as follows:

---

977 (Pa. 2018) (separate notices of appeal must be filed when a single order resolves issues arising on more than one trial court docket), **overruled in part**, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed). This Court consolidated these appeals *sua sponte* on September 7, 2021. Order, 9/7/21.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] 18 Pa.C.S. §§ 2502(a), 901(a), 2702(a), 6105(a)(1), 6106(a)(1), 2705, and 907(a), respectively.

On June 21, 2007, at approximately 5:00 p.m., Jennifer Patrick ("Jennifer") and her sister, Diane Patrick ("Diane")[4] were outside their home with their five . . . year old niece and neighbors near the corner of Emerald and Somerset Streets in . . . Philadelphia. At that time, [Appellant] and Angelo Martinez drove Martinez's Pontiac Bonneville to that location where they began "setting up the corner" to sell drugs. Diane approached [Appellant] and told him "We're not allowing that here[.]" [Appellant] responded, "it's me Dirt, it's me." Diane replied, "I don't care who it is, it's not happening here." Martinez, standing next to [Appellant], pointed to the sisters and said "Man, F*ck them bitches, f*ck them!"

Jennifer and Diane then began walking their niece to the corner store [and a]s the sisters walked away, [Appellant] pulled up his shirt and yelled "F*ck it," revealing a black handgun in his waistband. Martinez continued to point at the sisters yelling, "F*ck them bitches!" After they returned from the store, Jennifer brought her niece into her house. Diane approached [Appellant] and Martinez, who were still standing on the corner, and told them both to leave.

Raheem Haines, who lived across the street and was friends with Jennifer and Diane, heard the argument and came out of his house to stop the argument. As the argument escalated, Jennifer tapped her finger on [Appellant]'s forehead and said, "You're a f*cking nut for showing a gun while my niece is out here." In response, [Appellant] pulled out his gun and shot Jennifer once in her stomach. Jennifer fell to the ground and cried out[,] "He shot me!" Diane began to scream and hit [Appellant] with her fists. [Appellant] then shot Diane in her chest and neck.

As . . . Haines tried to intervene, Martinez punched [him] and threw him to the ground. [Appellant] then repeatedly shot [Haines] in the head and torso as he laid on the ground. As Jennifer crawled away, [Appellant] continued to shoot at her, as he and Martinez ran to Martinez's car and drove away from the scene. Diane was pronounced dead at a nearby hospital. [ ]Haines was pronounced dead at the scene. Jennifer was taken

_____

[4] Throughout the trial, Diane Patrick is also referred to as "Dirt" or "Day Day." N.T. Trial (Jury) Volume 1, 4/27/10, at 6.

- 3 -

to a hospital and underwent successful emergency surgery for her gunshot wound.

Police responded to the scene and began searching for [Appellant] and Martinez. The pair were caught and arrested after they were identified by eyewitnesses. A Beretta 9mm handgun was recovered after a search of Martinez's car.

PCRA Ct. Op. 9/10/21, at 1-2.[5]

Appellant was subsequently charged with two counts of first-degree murder, and one count each of attempted murder, aggravated assault, possession of a firearm prohibited, firearms not to be carried without a license, carrying a firearm on public streets of Philadelphia, reckless endangerment of another person (REAP), conspiracy, and possession of an instrument of crime.[6] This case proceeded to a jury trial, where he was jointly tried with co-defendant Martinez.[7]

At trial, the Commonwealth presented the testimony of, *inter alia*, eyewitness and victim Jennifer Patrick. Relevant to this appeal, we note that during her testimony, the trial court gave a curative instruction regarding certain statements she made about medication and being in a relocation program and comments the court made about trial counsel. Notably, trial

---

[5] The PCRA court gleaned its recitation of facts from this Court's decision concerning co-defendant Martinez's PCRA appeal. *See* PCRA Ct. Op. at 2 n.1, *citing* ***Commonwealth v. Martinez***, 2821 EDA 2010 (unpub. memo. at 2-4) (Pa. Super. Feb. 14, 2012).

[6] 18 Pa.C.S. §§ 6108, 903(a)(1), respectively.

[7] Martinez was charged with *inter alia*, two counts of third-degree murder, one count of attempted murder, and one count of aggravated assault. 18 Pa.C.S. § 2502(c).

counsel did not object to the curative instruction. At the conclusion of trial, and pertinent to this appeal, the court charged the jury on the "beyond a reasonable doubt" standard, to which trial counsel also did not object.

The jury found Appellant guilty of two counts of first-degree murder, and one count each of attempted murder, aggravated assault, possession of a firearm prohibited, firearms not to be carried without a license, and possession of an instrument of crime.[8]

On May 12, 2010, the trial court sentenced Appellant as follows: (1) on both counts of first-degree murder, a term of life imprisonment; (2) on attempted murder, a consecutive term of 20 to 40 years' incarceration; (3) on possession of firearms prohibited, a concurrent term of three years' and six months' to seven years' incarceration; (4) on firearms not to be carried without a license, a concurrent term of three years' and six months' to seven years' incarceration; and (5) on possession of an instrument of crime, a concurrent term of two years' and six months' to five years' incarceration. Appellant's conviction for aggravated assault merged with attempted murder for sentencing purposes.

Appellant took a direct appeal with this Court, which affirmed the judgment of sentence on February 14, 2012. *Commonwealth v. Maldonado*, 1595 EDA 2010 (unpub. memo.) (Pa. Super. Feb. 14, 2012).

---

[8] Appellant was found not guilty of conspiracy and the remaining charges were *nolle prossed*.

The Pennsylvania Supreme Court denied Appellant's subsequent petition for allowance of appeal on March 21, 2013.[9] *Commonwealth v. Maldonado*, 448 EAL 2012 (Pa. March 21, 2013).

Appellant timely filed a *pro se* PCRA petition, his first, on February 28, 2014.[10] The PCRA court appointed David Rudenstein, Esquire, who filed an amended PCRA petition on October 31, 2017, where he raised claims of ineffective assistance of counsel for failing to raise certain claims on appeal.[11] Appellant's Amended Petition Under Post-Conviction Relief Act at ¶¶ 12-13. Counsel then filed a supplemental amended petition on August 11, 2019, challenging the trial court's jury instruction on reasonable doubt and claiming both trial and appellant counsel were ineffective for failure to preserve this claim on appeal. Appellant's Supplemental Amended Petition Under Post-Conviction Relief Act, 8/11/19, at ¶ 3. The Commonwealth filed a motion to dismiss and a supplemental motion to dismiss on May 1, 2018, and September

---

[9] The PCRA court and Appellant each state he did not file a petition for allowance of appeal with the Supreme Court. The record reflects otherwise. *See Maldonado*, 448 EAL 2012.

[10] Appellant asserts in his brief that he filed his first PCRA petition on September 18, 2014. Appellant's Brief at 15. The certified record reflects February 28th. Accordingly, we will refer to that day as the operative filing date.

[11] According to Appellant's amended petition, he was appointed counsel who withdrew from representation before the PCRA court appointed Attorney Rudenstein. Appellant's Amended Petition Under Post-Conviction Relief Act, 10/31/17, at ¶ 7. Appellant asserts this is a first timely PCRA petition. *Id.* at ¶ 9.

9, 2019, respectively. The PCRA court filed a notice of dismissal pursuant to Pa.R.Crim.P. 907 on October 30, 2019. Appellant then filed a *pro se* motion requesting an extension of time to retain private counsel. Appellant's Motion for Enlargement of Time In Order to Retain Private Counsel, 11/13/19.

On December 3, 2019, Appellant filed a motion to proceed *pro se* and an amended PCRA petition. On July 10, 2020, the PCRA court removed Attorney Rudenstein and appointed Joseph Schultz, Esquire to represent Appellant. On February 21, 2021, Attorney Schultz filed a supplemental PCRA petition. In this supplemental petition, Appellant incorporated the claims in his previous October 13, 2017, and August 11, 2019, petitions and raised a new claim, arguing trial counsel was ineffective for failing to object to an improper curative instruction after Jennifer's testimony. Appellant's Supplemental Petition Seeking Post-Conviction Relief, 2/21/21, at ¶¶ 5-6, 8, 10.

On April 26, 2021, the Commonwealth filed a Supplemental Motion to Dismiss Appellant's most recently filed PCRA petition. On June 5, 2019, this matter was administratively reassigned to the undersigned Honorable Charles A. Ehrlich, for disposition. This matter was then listed for review of the above referenced petitions and responses, and argument before the PCRA court. On May 27, 2021, the PCRA court, after extensive assessment of the briefs, law, and arguments presented by counsel, issued a 20-day Notice of Dismissal

pursuant to Rule 907.  Appellant did not file a response.  Thereafter, on July 20, 2021, the PCRA court formally dismissed Appellant's PCRA petition.[12]

Appellant filed a timely notice of appeal at each of his dockets and complied with the PCRA court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The PCRA court issued a Pa.R.A.P. 1925(a) opinion on September 10, 2021.

On appeal, Appellant raises the following issues:

1. [Whether t]he PCRA court erred when it denied, without an evidentiary hearing, [ ] Appellant's request for a new trial based on counsel's ineffectiveness for failing to object to the trial court's deficient reasonable doubt instruction[?]

2. [Whether t]he PCRA court erred in denying, without an evidentiary hearing, [ ] Appellant's argument that trial counsel was ineffective for failing to object to an improper curative instruction from witness Jennifer Patrick[?]

Appellant's Brief at 15, 22 (some capitalization omitted).[13]

Preliminarily, we note the relevant standard of review for denial of a PCRA petition:

We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions

---

[12] We note that co-defendant Martinez also filed a PCRA petition raising substantially similar issues to Appellant's present PCRA petition.  The PCRA court dismissed Martinez's petition, and a panel of this Court recently affirmed the court's decision.  *See Commonwealth v Martinez*, 1921/1922 EDA 2020 (unpub. memo.) (Pa. Super. March 8, 2022).

[13] Appellant's "Statement of Questions Involved" included issues that are either not complete sentences or unrelated to the claims he raised in the argument section of his brief.  Appellant's Brief at 8.  This does not impact our review as Appellant includes his claims in the argument section of his brief.

are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

With respect to the PCRA's timeliness requirements, this Court has explained:

Section 9545 of the PCRA expressly states that a PCRA petition "shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545. A judgment of sentence becomes final at the conclusion of direct review, including discretionary review, or at the expiration of time for seeking the review. [42 Pa.C.S.] § 9545(b)(3). "Our courts have strictly interpreted this requirement as creating a jurisdictional deadline." A court may not address the merits of the issues raised if the PCRA petition was not timely filed.

*Id.* (some citations omitted).

In the instant case, this Court affirmed Appellant's judgment of sentence on February 14, 2012, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on March 21, 2013. *See Maldonado*, 1595 EDA 2010; *Maldonado*, 448 EAL 2012. Therefore, he had 90 days — or until June 19, 2013 — to file a *writ of certiorari* with the United States Supreme Court. *See* S.Ct.R. 13(1). Appellant did not, and thus, his judgment of sentence became final on June 19th. Appellant then had one year, or until June 19, 2014, to file a PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1).

- 9 -

Appellant filed the present petition on February 28, 2014, and as such, it is timely.

Both of Appellant's claims challenge the PCRA court's dismissal of his petition without an evidentiary hearing on his ineffectiveness claims. As such, we preliminarily note, counsel is presumed to have rendered effective assistance. *Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014) (citation omitted). To prevail on an ineffectiveness claim, the petitioner must establish the following factors: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the defendant was prejudiced. *Id.* at 1020. Further, the defendant's claims "must meet all three prongs of the test for ineffectiveness, if the court can determine without an evidentiary hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing." *Id.* (citation omitted).

Where a court has dismissed a PCRA petition without an evidentiary hearing, we review the decision for an abuse of discretion:

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Johnson*, 139 A.3d 1257, 1273 (Pa. 2016).

In his first claim, Appellant argues trial counsel was ineffective where he did not object to the trial court's "reasonable doubt" instruction. Appellant's Brief at 18, 22. After review, we conclude no relief is due.

Keeping our standard of review in mind, we are guided by the following. "[I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instruction, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citations omitted). Thus, this Court will not find jury instructions erroneous when, taken as a whole, they adequately and accurately set forth the applicable law. *Commonwealth v. Daniels*, 963 A.2d 409, 410 (Pa. 2009).

In the present matter, at the conclusion of trial, the court gave the jury the following instruction regarding the "reasonable doubt" standard:

> [L]et's be clear about reasonable doubt. I find it helpful to think about it in this way. Now, each one of you has somebody in your life you love. That's the benefit of me having the opportunity to talk with you individually. I know there is someone you love. Take a moment and think if your precious one, the one you love, is told

by their physician that they have life-threatening condition and that . . . life-threatening condition required [surgery]. Now, you're probably going to ask for a second. You might even ask for a third opinion. If you're like me, you will start researching the disease. You will start asking questions. What do you know? What do you know about this disease? What do you know about the treatment protocols? Who are the best doctors in town? [W]ho are the best doctors in the country? What do I do to get the best care possible for my loved one? What are my options?

Now, ladies and gentlemen, at some moment the question will be called, are you going forward with the surgery to your loved ones or not? If you go forward — because you have moved beyond all doubt. There are no guarantees. There are no promises. If you go forward, it's because you have moved beyond all reasonable doubt. A reasonable doubt must be a real doubt. It may not be a doubt that is imagined or manufactured to avoid carrying out an unpleasant responsibility. You may not find a citizen guilty based upon a mere suspicion of guilt. The Commonwealth bears its burden on proving each defendant guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then the person is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth has not met its burden, you must find him not guilty.

N.T. Trial (Jury) Vol. 1, 5/4/10, at 109-11 (paragraph break added).

In his argument, Appellant asserts the jury instruction "impermissibly lowered the standard of proof required" to convict Appellant, and therefore, it violated constitutional protections. Appellant's Brief at 18. Appellant states that the trial court's jury instruction was substantially similar to the instruction in a federal district court decision, ***Brooks v. Gilmore***, 2017 WL 3475475 (E.D.Pa. 2017), which was deemed "constitutionally infirm." ***Id.*** at 18-19. Appellant claims the analogy — that a loved one is sick and needs surgery — in the instruction "fails to even present a decision" and is a misstatement of law for the beyond a "reasonable doubt" standard. ***Id.*** at 21. Further,

Appellant maintains the jury instruction had a "structural error," causing him prejudice. *Id. citing Sullivan v. Louisana*, 508 U.S. 275, 281-82 (1993) (opining "'[B]eyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof[,]" and therefore, constitutionally deficient reasonable doubt instruction cannot be harmless error); *Weaver v. Massachusetts*, 137 S.Ct. 1899, 1902-04 (U.S. 2017) (stating "[A] structural error, which 'affect[s] the framework within which the trial proceeds, defies harmless error analysis[,]'" but defendant was not entitled to relief on an ineffectiveness claim where he failed to show prejudice) (citation omitted). For the above reasons, Appellant argues the PCRA court erred when it denied his petition without an evidentiary hearing. *Id.* at 15, 22.

We note that until very recently, this Court repeatedly rejected similar *Brooks*-based challenges to the "reasonable doubt" instruction. *See Martinez*, 1921/1922 EDA 2020 at *10-*11; *Commonwealth v. Parker*, 1104 EDA 2019 (unpub. memo.) (Pa. Super. July 12, 2021) (concluding *Brooks* is not persuasive and even if the Court were to accept this analysis, counsel cannot be held ineffective for failing to predict a change in the law where the defendant's trial was in 2011, and *Brooks* was decided in 2017); *Commonwealth v. Gamble*, 2944 A.3d 2019 (unpub. memo.) (Pa. Super. June 8, 2021) (determining *Brooks* is not persuasive authority and this argument afforded the defendant no relief).

However, on November 23, 2022, after Appellant submitted his brief in the instant matter, the Pennsylvania Supreme Court issued **Commonwealth v. Drummond**, ___ A.3d ___, 2022 WL 1717610 (Pa. Nov. 23, 2022), which concluded that the "reasonable doubt" instruction, like the one before us presently, was reasonably likely to make jurors incorrectly apply a diminished standard of proof.

In **Drummond**, the defendant shot and killed two people. **Drummond**, 28 EAP 2021 at *3. At trial, the court gave a jury instruction almost identical to the one at issue. **Id.** at *9-*11. The jury found the defendant guilty of, *inter alia*, two counts of first-degree murder. **Id.** at *11-*12. A panel of this Court affirmed the defendant's sentence, and the Supreme Court denied his petition for allowance of appeal. **Id.** at *12. He then filed a PCRA petition alleging his counsel was ineffective for failing to object to the jury instruction. **Id.** The PCRA court dismissed his petition, stating "the instruction, when read in the context of the court's instructions in their entirety, did not diminish the reasonable doubt standard." **Id.** at *12-*13. A panel of this Court affirmed the order, concluding the claim had no arguable merit because an "imperfect jury instruction does not trigger automatic reversal, so long as the balance of the instructions, 'taken as a whole, fairly and accurately convey[ ] the essential meaning.'" **Id.** at *13-*14. The Supreme Court granted the defendant review of this claim. **Id.** at *14.

Ultimately, the Court determined the defendant's claim — that his counsel was ineffective for failing to object to the reasonable doubt instruction

— had arguable merit. ***Drummond***, 28 EAP 2021 at *22. Specifically, it stated:

> Methods of hypothetical explication and idiosyncratic analogy allow for significant, subjective variance in how the criminal proof standard is executed. A criminal jury is made up of twelve individuals tasked with deliberating and reaching a verdict. Each juror arrives in the jury box with life experiences of his or her own. Each juror would act in his or her own individual manner when a "precious one's" life is on the line. Each juror would bring to bear different religious, moral, and/or social beliefs in reaching that decision. Juries are comprised of people of different temperaments, backgrounds and identities, people who come from different regions and outlooks. Such diversity necessarily would produce a different "gut feeling" in each juror about surgery decisions for "precious ones." When a trial judge tells the jurors to do anything other than objectively evaluate the evidence, the court effectively creates twelve standards of review, each one different from the next, silently generated in each individual juror's mind based upon the individual lived experiences and world views of that particular juror. For some, that standard might be higher than the point at which reasonable doubt exists on a continuum. For others, it will be far lower. That is where the constitutional violation occurs, down in the murky realm that lies below proof beyond a reasonable doubt, where probabilities, whims, personal defaults, shorthands, habits of mind, and suppositions exist.

***Drummond***, 28 EAP 2021, at *32-*33. The Court then opined:

> We recognize that the problematic aspect of the trial court's reasonable doubt instruction was bookended by other, correctly-stated and objectively-based reasonable doubt instructions. We do not overlook our practice of assessing instructions in the context of the trial judge's instructions as a whole, rather than in isolation. We have considered all of the relevant instructions provided to the jury in this case in their entirety, and in the manner in which the instructions interact. Such analysis does not ameliorate the error, nor does it undermine our conclusion that **it was reasonably likely that the jury here considered the evidence using a lower standard of proof**. The principle of considering instructions as a whole might suffice to salvage a

- 15 -

charge when a judge has made a minor misstatement in some peripheral instruction. But this approach offers no safe harbor when **the misstatement confuses and distorts the most fundamental principle in our criminal law and when it instructs jurors to perform their otherwise objective task by likening it to an impassioned, last-ditch plea to save a loved one**. Under these circumstances, comparing the valid portions of the instruction against the invalid ones does not suffice to neutralize the prejudicial effect of the error. If it did, there never could be a successful challenge to an errant reasonable doubt instruction so long as the judge correctly mentioned the standard somewhere — anywhere — in the record. If that were the case, then the Fourteenth Amendment would be toothless in this context.

**Drummond**, 28 EAP 2021, at *39-*40 (emphases added). Relying on

**Brooks**, the Court also stated the similar instruction "allows for an acquittal

to occur only after the jury finds a very high degree of doubt, not just a

reasonable one." **Id.** at *43.

Nevertheless, the Supreme Court concluded that despite the claim

having arguable merit, the defendant could not demonstrate that his counsel

acted unreasonably, opining:

> **It is well-settled that counsel "cannot be held ineffective for failing to anticipate a change in the law." At the time of [the defendant's] trial in December 2010, no Pennsylvania court ever had invalidated jury instructions that used the hypotheticals which we disapprove of today.** To the contrary, at the time, the Superior Court had upheld such instructions, albeit in non-precedential decisions, and this Court had never addressed the issue. Thus, based upon the law extant in 2010, **counsel was under no reasonable obligation to raise a challenge to the instruction, as any such objection would have lacked a then-existing legal foundation. Counsel was not required to anticipate, nor could he have foreseen, that this Court would find the instruction to be constitutionally defective over a decade later. For this reason, counsel cannot be deemed ineffective**.

*Drummond*, 28 EAP 2021 at *45-*46 (footnotes omitted; emphases added). We conclude *Drummond* is indistinguishable from the present matter on this issue and governs our analysis.[14]

Here, as noted above, the jury instruction administered at trial and Appellant's claim was almost identical to that of *Drummond*. *See Drummond*, 28 EAP 2021 at *9-*11. Therefore, there is arguable merit to Appellant's assertion. Nevertheless, pursuant to *Drummond*, counsel "was under no reasonable obligation to raise a challenge to the instruction, as any such objection would have lacked a then-existing legal foundation" and "was not required to anticipate, nor could he have foreseen, that this Court would find the instruction to be constitutionally defective over a decade later." *Id.* at *45-*46. For that reason, we agree with the PCRA court's determination, albeit for differing reasons,[15] that Appellant's ineffectiveness claim must fail.

---

[14] "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." *Commonwealth v. Chesney*, 196 A.3d 253, 257 (Pa. Super. 2018) (citations and quotation marks omitted).

[15] *See Montalvo*, 205 A.3d at 286 ("[T]his Court may affirm a valid judgment or order for any reason appearing of record."). Without having *Drummond* as precedent when it wrote its Rule 1925(b) opinion, the PCRA court concluded Appellant failed to establish his claim had arguable merit and as such, was not entitled to an evidentiary hearing. The court provided the following rationale for its decision: (1) *Brooks* is not controlling law in the present matter; (2) this Court has affirmed the use of this particular jury instruction in multiple non-precedential decisions both prior to and following Appellant's trial; (3) federal courts in the Eastern District of Pennsylvania have similarly upheld the
*(Footnote Continued Next Page)*

*See id.* at \*45-\*46 (counsel cannot be ineffective for failing to object to a jury instruction that had not been previously "invalidated" by a Pennsylvania court). Appellant failed to establish the second prong of the ineffectiveness test — that trial counsel did not act reasonably when she did not object to the trial court's instruction as she could not predict a change in law — and as such, his claim cannot succeed. *See Charleston*, 94 A.3d at 1020. No relief is due. *See Johnson*, 139 A.3d at 1273; *Wah*, 42 A.3d at 338.

In his second claim, Appellant argues trial counsel was ineffective for failing to object to the trial court's curative instruction that purportedly bolstered Jennifer Patrick's testimony. *See* Appellant's Brief at 25-26.

With our standard of review in mind, we note the following. Improper bolstering occurs when the government's prestige is placed, normally by the prosecution, behind a witness and "assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." *Commonwealth v. Ramos*, 231 A.3d 955, 959 (Pa. Super. 2020). Though a prosecutor may not reassure a jury as to a witness's credibility, they "may make fair comment on the admitted evidence[.]" *Commonwealth v.*

---

constitutionality of similar instructions; (4) jury instructions are within the discretion of the trial court and "was a proper and accurate example used to explain a complicated legal concept[;]" and (5) when read in context of the entire jury charge, the analogy provided to the jurors did not elevate the level of doubt needed to acquit Appellant. PCRA Ct. Op. at 9-11.

*Sanchez*, 82 A.3d 943, 981 (Pa. Super. 2013). Such comments "must be evaluated in the context in which the comment was made." *Commonwealth v. Reid*, 259 A.3d 395, 429 (Pa. 2021). A trial court does not err where it "merely allude[s] to evidence produced by the Commonwealth at trial while instructing the jury that it could accept all, part, or none of the evidence." *Commonwealth v. Fletcher*, 750 A.2d 261, 271 (Pa. 2000), *abrogated on other grounds, Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003). We presume that the jury follows the trial court's instructions. *Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. Super. 2014).

By way of background, the Commonwealth called Jennifer to testify as an eyewitness and victim to the incident. Jennifer expressed confusion during her examination about the general timeline of this incident as well as unrelated matters and the following exchange occurred:

> [Appellant's trial counsel]: Do you remember that at the preliminary hearing? [The Commonwealth] said to you[,] you have to go take care of your bench warrant?
>
> [Jennifer]: I know. But I took care of my bench warrant.
>
> [Appellant's trial counsel]: I know you did. But I'm talking about before you saw the detectives. You had an outstanding bench warrant?
>
> [Jennifer]: Yes.
>
> [Appellant's trial counsel]: When they came and got you?
>
> [Jennifer]: Yes.
>
> [Appellant's trial counsel]: They didn't lock you up for that, did they?
>
> [Jennifer]: For the bench warrant?

[Appellant's trial counsel]: For the bench warrant.

[Jennifer]: No. Because I got it lifted.

[Appellant's trial counsel]: You got it lifted about four days later. Are you with me? Do you remember that?

[Jennifer]: Yes.

[Appellant's counsel]: What happened in those four days? Did you stay in jail before you testified at the preliminary hearing or were you allowed to go home?

[Jennifer]: I was in jail.

[Appellant's trial counsel]: I'm sorry?

[Jennifer]: I was locked up.

[Appellant's trial counsel]: How long were you locked up before you[ —]

[Jennifer]: A good week. Not even a week.

[Appellant's trial counsel]: Your Honor, I would just ask defense counsel. I think Ms. Patrick is clearly confused.

[Trial court]: I think we are totally confused now. Let's clean this up. You got arrested in November of 2006?

[Jennifer]: Right.

[Trial court]: When you got arrested, you were in jail for a little while; right?

[Jennifer]: Yes.

[Trial court]: And then they let you out of jail?

[Jennifer]: Yes.

[Trial court]: You made bail?

[Jennifer]: Yes.

[Trial court]: And you were suppose[d] to go to court some time in 2007 before this shooting occurred?

[Jennifer]: Yes.

[Trial court]: And you didn't go?

- 20 -

[Jennifer]: No.

[Trial court]: You get shot?

[Jennifer]: Yes.

[Trial court]: Did you go to the hospital?

[Jennifer]: Yes.

[Trial court]: You come home from the hospital?

[Jennifer]: Yes.

[Trial court]: Did the homicide detectives come pick you up for your interview?

[Jennifer]: I was in protective custody.

[Trial court]: You were in protective custody.

[Jennifer]: Yes.

N.T., 4/27/10, at 112-15. Jennifer also stated: "You just got to bear with me because I take medication. You just got to bear with me because I'm not on my medication right now. So you have to bear with me. I am on a lot of medication because of this incident." *Id.* at 84. After Jennifer stated she was in "protective custody," the trial court blamed the "mess" of her examination on Appellant's trial counsel. *Id.* at 115.

Trial counsel then requested a sidebar, and the Commonwealth explained at that time and the next day before trial recommenced that Jennifer was in witness relocation[16] due to threats made by co-defendant Martinez's brother. N.T. 4/27/10, at 117-18; N.T., 4/28/10, at 8-10. The trial court,

_____

[16] Jennifer stated she was in "protective custody," but the Commonwealth clarified she was only "relocated." N.T. Trial (Jury) Vol. 2, 4/28/10, at 6.

Appellant's counsel, and co-defendant's counsel were unaware that Jennifer was in witness relocation prior to her testimony. N.T. 4/27/10, at 117-18; N.T. 4/28/10, at 17, 20. Counsel for Appellant and co-defendant Martinez made an oral motion for mistrial based on, *inter alia*, Jennifer's testimony. N.T., 4/28/10, at 17, 20-22. Trial counsel also argued that the trial court's admonition before the jury that the "mess" was her fault destroyed counsel's credibility and thus would deprive Appellant of a fair trial. The trial court denied both requests for mistrial, stating "[t]here is nothing to support the fact that this jury cannot be given the appropriate cautionary instructions with respect to how to address what occurred yesterday afternoon." *Id.* at 23. Rather, the trial court precluded any evidence regarding threats made against Jennifer, agreed to instruct the jury that the confusion was not the fault of Appellant's counsel, determined that all counsel would stipulate to the dates surrounding Jennifer's bench warrant, and decided to attribute Jennifer's witness relocation to "an unrelated case." *Id.* at 24, 25, 28-30.

After speaking with the Commonwealth, Appellant's counsel, and co-defendant's counsel extensively, *see* N.T., 4/28/10, at 24-33, the trial court offered the following curative instruction to the jury:

> Ladies and gentlemen, thank you for agreeing to come in late today. You know I had other cases to work on. To say it complicated my day is an understatement but that's okay. I want to start[,] in addition to thanking you for coming in, to ask for your forgiveness. I was irritated yesterday when I last saw you. . . . I work very hard at having things go smoothly and things did not go smoothly yesterday afternoon[,] and I was not pleased about that. And I did something that was wrong and that I should

not have done. I told [Appellant's counsel that] she created this mess, to quote me. She didn't. Nothing that occurred yesterday afternoon was [her] fault.

There are times, and I would well imagine where you see them in your own life, where the universe kind of comes together and it's like, boom. It was in no way her fault. It was wrong of me to say it. So I apologize to her publicly for saying that. She's a really good lawyer. She works very hard. So part of what has made us late today is my trying to figure out this because that's my job; to make sure the record is clean and that you understand exactly what has occurred.

And what I have been able to determine is that on November 4[,] 2006 Jennifer . . .was arrested. She was arrested for crimes related to the possession and sale of drugs. On June 1[,] 2007, a bench warrant was issued because she failed to show up in court. Clearly that had nothing to do with this case because the date that is relevant to us is June 21[,] 2007. That's the day that the citizens in question lost their life. [Jennifer] Patrick was injured on that day. She was released from Temple Hospital on June 30[,] 2007. She stayed with various family and friends between June 30th and September 15[,] 2007. She gave her statement to Homicide on September 15[,] 2007. On September 19[,] 2007, she testified at the preliminary hearing. One year later completely unrelated to this case as best I can tell, her bench warrant was lifted on September 18[,] 2008.

Now, [Jennifer] used a term that we don't actually use yesterday. She said she was in protective custody. She also told us at some point during her testimony that she takes medication but she did not take her medicine yesterday. When she used that term "protective custody," she was referring to what we call witness relocation. [Jennifer] was placed in witness relocation from February 12[,] 2008, until April 14[,] 2008 in a case completely unrelated to this proceeding.

It is my conclusion — and you're not required to draw any conclusion that I have reached. My conclusions have no bearing on you. But it is my conclusion that yesterday was a long day. She didn't take her meds. We were asking all these questions about dates and times. I think she got confused. These are the facts. The inferences you draw from these facts and how you use this information is solely for you to decide. But these are the facts for you to use as you deem appropriate.

- 23 -

N.T., 4/28/10, at 41-44 (paragraph breaks added). Trial counsel did not object to the curative instruction.

Here, Appellant avers the trial court's instruction "undermined the entirety of trial counsel's examination by expressing [its] opinion on the evidence" and as such, trial counsel should have objected. Appellant's Brief at 23. Appellant maintains that the trial court's instruction was "impermissible error" and warranted a new trial. *Id.* at 25. He insists that trial counsel's strategy was to impeach Jennifer "with every possible fact available to them" and failing to object undermined this tactic. *Id.* Specifically, Appellant argues the instruction did the following:

> (1) informed the jury to disregard Jennifer['s] motive for testifying; and, (2) undermined trial counsel's cross-examination, which attempted to paint Jennifer . . . as a cooperating witness who was willing to implicate others in criminal actions as . . . an attempt to receive a lesser sentence for her own crimes. [The trial court] unilaterally gave . . . imprimatur to Jennifer['s] testimony, which was central to securing . . . Appellant's conviction.

*Id.*

The PCRA court concluded Appellant's argument, that the curative instruction told the jury to disregard evidence and improperly bolstered Jennifer's testimony, was without merit. PCRA Ct. Op. at 14. Instead, it stated its instruction did the following: (1) attempted to explain Jennifer's confusion surrounding the timing of events by reminding them she did not take her medication and was involved in another criminal matter for which she failed to appear; and (2) reminded the jury that it was free to utilize the

information in any way they deemed appropriate and emphasized the court's conclusions had "no bearing" on their decision. *Id.* at 15; N.T. 4/28/10, at 24. We agree.

Based on the record before us, we conclude that the trial court's curative instruction did not improperly bolster Jennifer's testimony. The trial court did not comment on the truthfulness or credibility of the witness. *See Ramos*, 231 A.3d at 959; *Sanchez*, 82 A.3d at 981. Further, it only relied on statements in the record, Jennifer's testimony about her medication and stipulations by counsel as to the timeline, in charging the jury. Contrary to Appellant's allegations, the trial court did not offer inappropriate personal opinion regarding the credibility of the witness, but provided important context and clarification regarding the timeline of events while also reminding the jurors several times they are not required to come to the same conclusion as the court. *See* N.T., 5/4/10, at 31-32, 99-100, 101-105, 111-114, 118-121.

Moreover, we note that Appellant benefitted from Jennifer's testimony and the trial court's actions afterward. The curative instruction indirectly touched upon Jennifer's credibility, or lack thereof, painting the witness as confused, attributed the confusion to her not taking her medication before testifying, and as being involved in multiple criminal matters. The instruction also precluded evidence potentially damaging to Appellant and co-defendant's defense from ever reaching the jury — specifically the fact that certain statements from co-defendant's family caused Jennifer to enter a relocation program. Because of the above factors, we conclude Appellant's argument is

meritless, so his ineffectiveness claim must fail. ***See Charleston***, 94 A.3d at 1020.

Since both of Appellant's claims are unavailing, no purpose would be served by an evidentiary hearing. ***Id.*** Accordingly, no relief is due, and we affirm the PCRA court's order dismissing Appellant's petition. ***See Johnson***, 139 A.3d at 1273; ***Wah***, 42 A.3d at 338.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2023